**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN  DISTRICT OF ILLINOIS**

MARISSLA MACKEY, as Independent )
Administrator  of the  Estate of TIGE )
COTTRELL MACKEY, deceased. )
  )
  ) No.  3:21-cv-01490-NJR
v.  )
  )
THE UNITED STATES OF AMERICA, )
FAISAL AHMED, MD, KIMBERLY )
SCHNEIDER, PA-C, PAUL KELLY, RN, )
BETTY ULMER, RN, and ASHLEY KNEBEL, RN, )
  )
Defendants. )

**AMENDED COMPLAINT**

Plaintiff Marissla Mackey, as Independent  Administrator  of the  Estate of Tige Cottrell

Mackey,  Decedent,  brings  this  action  against  Defendants  United  States  of  America,  Faisal

Ahmed,  MD, Kimberly  Schneider,  PA, Paul Kelly, RN, Betty Ulmer, RN, and Ashley Knebel, RN,

as follows:

**INTRODUCTION**

1. On May 28, 2019, Plaintiff's decedent, Tige Cottrell Mackey ("Mr. Mackey"),

died a few hours after arriving at the HSHS  Family Hospital in Greenville, IL as a result of steroid-

induced  hyperglycemia  along  with  undiagnosed  steroid-induced  diabetes  mellitus  (Type  2),

resulting in fatal complications from diabetic ketoacidosis.

2. Diabetic ketoacidosis is a preventable complication of untreated diabetes mellitus (Type 2). However, left untreated, diabetic ketoacidosis can be fatal, as it was for Mr. Mackey.

3. Mr. Mackey's death was the result of the repeated failures of medical staff at FCI Greenville to follow basic and routine medical procedures to monitor, diagnose and treat his hypoglycemia and Diabetes Mellitus Type 2 that he developed from a course of steroid treatment administered to him by FCI Greenville medical staff in the six-week period prior to his death.

4. In multiple encounters with Mr. Mackey in the weeks prior to his death, prison medical staff failed to perform the basic and routine medical procedure of checking his glucose levels after he was given steroid injections, which caused Mr. Mackey's insulin levels to fall and his blood sugar to spike.

5. Prison staff ignored Mr. Mackey's cries for help from his cell, where for at least five days he was unable to move, and had been experiencing nausea, diarrhea, and an altered mental state - all signs that he was gravely ill.

6. Steroid-induced hypoglycemia and diabetic ketoacidosis can be easily established under criteria established by the American Diabetes Association by use of basic and routine medical procedures, such as various methods for checking for elevated glucose levels.

7. Had the defendants conducted these basic and routine medical procedures during his multiple trips to FCI Greenville's infirmary between April 10 and May 21, 2019, Mr. Mackey would still be alive.

**JURISDICTION AND VENUE**

8. The jurisdiction of this Court is invoked under the Civil Rights Act, 42 U.S.C.

§ 1983, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*., and the Constitution of the United States of America.

9.      Venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391 because the acts and events giving rise to the complaint occurred in the Southern District of Illinois and because, upon information and belief, the Defendants reside in the Southern District of Illinois.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Notice of Plaintiff's claim was given to the Federal Bureau of Prisons by letter sent by overnight delivery to the Bureau of Prisons North Central Regional Office dated May 27, 2021 and United States Department of Justice Standard Form 75.

11.     Plaintiff's Notice was delivered to the Bureau of Prisons North Central Regional Office on May 28, 2019, and confirmed by Proof of Delivery.

12.     By letter dated August 11, 2021 from the Department of Justice, Federal Bureau of Prisons, Plaintiff's claim was denied.

## PARTIES

13.     Plaintiff Marissla Mackey is a citizen of the United States and resident of Eastpointe, Michigan.

14.     On May 24, 2021, Marissla Mackey was appointed Independent Administrator of the Estate of Tige Cottrell Mackey. *See* Exhibit 1.

15.     Mr. Mackey was Marissla Mackey's father, and at all relevant times was an inmate at FCI Greenville.

16.     Defendant United States of America is subject to suit for personal injury caused by the wrongful acts and omissions of employees of the government while acting within the course and scope of their office or employment under the circumstances where the defendant, if a private person,

3

would be liable to the Plaintiff, pursuant to the FTCA.

17.     Upon information and belief, Defendant Faisal Ahmed, MD ("Ahmed"), is and was, at all relevant times, a citizen of the United States, residing within the jurisdiction of this Court. At all relevant times, he was the medical doctor overseeing the care and treatment of Mr. Mackey at FCI Greenville, and an employee of FCI Greenville acting within the scope of his employment with the United States.

18.      Defendant Kimberly Schneider, PA-C ("Schneider"), is and was, at all relevant times, a citizen of the United States residing within the jurisdiction of this Court. At all relevant times, she was a licensed and certified Nurse Practitioner and prison medical employee who treated Mr. Mackey at FCI Greenville. At all relevant times, she was acting within the scope of her employment with the United States.

19.     Defendant Paul Kelly, RN ("Kelly"), is and was, at all relevant times, a citizen of the United States residing within the jurisdiction of this Court. At all relevant times, he was a prison medical employee who treated Mr. Mackey at FCI Greenville. At all relevant times, he was acting within the scope of his employment with the United States.

20.     Defendant Betty Ulmer, RN ("Ulmer"), is and was, at all relevant times, a citizen of the United States residing within the jurisdiction of this Court. At all relevant times, she was a prison medical employee who treated Mr. Mackey at FCI Greenville. At all relevant times, she was acting within the scope of her employment with the United States.

21.     Defendant Ashley Knebel, RN ("Knebel"), is and was, at all relevant times, a citizen of the United States residing within the jurisdiction of this Court. At all relevant times, she was a prison medical employee who treated Mr. Mackey at FCI Greenville. At all relevant times, she was acting within the scope of her employment with the United States.

22.     Defendants Ahmed, Schneider, Kelly, Ulmer and Knebel are sometimes

4

referred collectively to as the "Individual Defendants."

**FACTS**

23.      At the time of his death on May 28, 2019, Mr. Mackey was 47 years old and an inmate at FCI Greenville, a medium-security federal prison located in Greenville, Illinois.

24.      At all relevant times, Mr. Mackey received medical care and treatment in the Bureau of Prison Health Services ("Infirmary") where the Individual Defendants provided medical care and treatment to inmates such as Mr. Mackey.

25.      In the months leading up to his death, Mr. Mackey had been experiencing chronic low back pain and presented for repeated encounters with staff at the Infirmary about this pain.

26.      On or about December 18, 2018, staff at the Infirmary gave Mr. Mackey steroid injections to treat his chronic low back pain.

27.      It is a well-known fact throughout the medical community that steroids are a major drug-induced cause of hypoglycemia and diabetes mellitus.

28.      In addition to his chronic low back pain, Mr. Mackey had a medical history of degenerative disc disease, high blood sugar, hypertension, obesity, fatty liver, and other conditions.

29.      On or about April 8, 2019, Mr. Mackey was seen by Defendant Kelly, who evaluated his continued complaints of radiating back pain.

30.      Although he knew that Mr. Mackey had received epidural steroid injections four months earlier and knew about the associated risks, during the April 8, 2019 encounter, Defendant Kelly failed to evaluate, access, or monitor signs and symptoms indicating possible adverse reaction to the steroid injections, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

31.     On or about April 10, 2019, defendant Kimberly Schneider, PA-C, evaluated Mr. Mackey for his complaint of increased back pain.

32.     On or about April 10, 2019, Defendant Schneider prescribed a 20-day tapering course of Prednisone (an oral steroid) for Mr. Mackey.

33.     During the April 10, 2019 encounter, although she knew that Mr. Mackey had previously received steroid treatment and knew about the associated risks, Defendant Schneider failed to evaluate, access, or monitor Mr. Mackey for signs and symptoms of possible adverse reaction to his steroid treatment, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

34.     On or about April 22, 2019 and on or about May 9, 2019, Defendant Ulmer evaluated Mr. Mackey with complaints of bilateral kidney pains. Around that time, his back pain worsened to the point where Mr. Mackey was barely to walk. Mr. Mackey was issued a cane to assist his ambulation.

35.     In both the April 22, 2019 and May 9, 2019 encounters, although she knew that Mr. Mackey had previously received steroid treatment and knew about the associated risks, Defendant Ulmer failed to evaluate, access, or monitor for signs and symptoms indicating a possible adverse reaction to his steroid treatment, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

36.     On or about May 13, 2019, Mr. Mackey returned to the prison infirmary, and was seen again by Defendant Schneider for evaluation of his complaints of persistent lower back pain. Mr. Mackey was placed on extended medical convalescence.

37.     During the May 13, 2019 encounter, although she knew that Mr. Mackey had previously received steroid treatment and knew about the associated risks, Defendant Schneider failed to evaluate, access, or monitor Mr. Mackey for signs and symptoms indicating

6

possible adverse reactions to his steroid treatment, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

38.    On or about May 21, 2019, Defendant Ahmed and/or Schneider ordered a second epidural steroid injection for Mr. Mackey, although they knew that Mr. Mackey had previously received steroid treatment and knew about the associated risks, without evaluating, accessing, or monitoring Mr. Mackey for signs and symptoms indicating possible adverse reactions to his prior steroid treatment, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

39.    Within days of receiving the second steroid injection, Mr. Mackey began complaining of vomiting, diarrhea, and exhibited an altered mental state for 5-7 days.

40.    For at least 3 days, Mr. Mackey was unable to leave his bed.

41.    Mr. Mackey complained to prison staff that he was ill and needed to go to the Infirmary.

42.    Prison staff ignored Mr. Mackey's complaints for several days.

43.    Mr. Mackey's cellmate and inmates in the surrounding cells also complained to prison staff that Mr. Mackey was getting worse and needed medical assistance.

44.    Prison staff continued to ignore Mr. Mackey and his fellow inmates' complaints about Mr. Mackey's deteriorating medical condition.

45.    On or about May 25, 2019, Mr. Mackey was finally sent to the Infirmary and seen by Defendant Knebel for evaluation of complaints of nausea, vomiting, increased urination and increased bowel movement over the last several days.

46.    These symptoms are common symptoms of diabetic ketoacidosis.

47.    Although she knew that Mr. Mackey had previously received steroid treatment, knew about the associated risks, and knew the symptoms of diabetic ketoacidosis,

7

Defendant Knebel failed to check Mr. Mackey's urine or blood glucose levels.

48. Defendant Knebel instead instructed Mr. Mackey to avoid eating by mouth for the next 4-6 hours, then gradually increase as tolerated.

49. Mr. Mackey's avoidance of eating per Defendant Knebel's instructions *aggravated* Mr. Mackey's condition, as a lack of food causes insulin levels to drop and blood sugar to increase.

50. During the May 25, 2019 encounter, although she knew that Mr. Mackey had previously received steroid treatment, knew about the associated risks, and knew the symptoms of diabetic ketoacidosis, Defendant Knebel failed to evaluate, access, or monitor Mr. Mackey for signs and symptoms indicating possible effects of the oral and injected steroids administered to Mr. Mackey in the days and weeks prior, including the possibility of steroid-induced hyperglycemia and diabetes mellitus.

51. On or about May 27, 2019, Mr. Mackey returned to the infirmary with worsening of the symptoms reported during his encounters in the previous days. By that time, Mr. Mackey had persistent nausea and vomiting, now combined with diarrhea. Mr. Mackey reported that he had experienced these symptoms since the steroid injection he received on or about May 21, 2019.

52. Mr. Mackey was evaluated by a nurse at the infirmary who reported that Mr. Mackey's blood pressure and temperature were difficult to obtain. The nurse contacted Defendant Ahmed, who ordered an intravenous line and a fingerstick glucometer check and temperature reading.

53. The fingerstick glucometer reading indicated "High", along with a temperature reading of 92 degrees Fahrenheit. Defendant Ahmed ordered transfer of Mr. Mackey to the HSHS Holy Cross Family Hospital in Greenville, IL ("HSHS").

54. Mr. Mackey arrived at HSHS at approximately 7:36 p.m. on May 27, 2019.

55.     The HSHS Emergency Room evaluation indicated that Mr. Mackey presented with generalized weakness, chills, abdominal pain, low back pain polyuria and heavy breathing.

56.     Vitals taken in the HSHS Emergency Room were consistent with diabetic ketoacidosis. Additional labs taken at HSHS indicated Mr. Mackey was suffering from hyponatremia and hypochloremia due to marked elevation in glucose levels.

57.     Mr. Mackey was initially stabilized in the HSHS Emergency Room, but before transfer to the Intensive Care Unit, developed cardiac arrhythmia that resulted in cardiac arrest. Resuscitation efforts were unsuccessful. Mr. Mackey died at 1:55 a.m. on May 28, 2019.

58.     An Autopsy Report dated May 29, 2019 by the Office of the Coroner, Bond County, indicated cause of death as diabetic ketoacidosis with acute esophageal necrosis complicating epidural steroid injection for treatment of lumbar spondylosis with radiculopathy.

## COUNT I
### 42 U.S.C. § 1983 Deliberate Indifference
**(Defendants Faisal Ahmed, MD, Kimberly Schneider, PA-C, Paul Kelly, RN, Betty Ulmer, RN, and Ashley Knebel, RN)**

59.     Each of the foregoing paragraphs is incorporated as if restated fully herein.

60.     Mr. Mackey's chronic low back pain was an objectively serious medical condition.

61.     At all relevant times, it was commonly known within the medical community that the steroid treatment Mr. Mackey received for his chronic low back pain involved a risk of hypoglycemia, Diabetes Mellitus Type 2, and diabetic ketoacidosis.

62.     Hypoglycemia, Diabetes Mellitus Type 2, and diabetic ketoacidosis are objectively serious medical conditions.

9

63.     At all relevant times, based on their medical training and experience, each Individual Defendant knew that hypoglycemia, Diabetes Mellitus Type 2, and diabetic ketoacidosis are serious medical conditions.

64.     At all relevant times, based on their medical training and experience, each Individual Defendant knew about Mr. Mackey's serious risk of developing hypoglycemia, Diabetes Mellitus Type 2, and diabetic ketoacidosis as a side effect of his steroid treatments which they knew he received, particularly in light of their knowledge of Mr. Mackey's medical history.

65.     Each of the Individual Defendants' failures to evaluate, access, or monitor Mr. Mackey for possible side effects of the steroid treatment, which they each knew were particular risks for Mr. Mackey, were plainly inappropriate such that the each of the Individual Defendants intentionally, knowingly, and/or recklessly disregarded Mr. Mackey's serious medical needs.

66.     Mr. Mackey's nausea, vomiting, increased urination, increased bowel movement, and altered mental state were objectively serious medical conditions.

67.     At all relevant times, it was commonly known within the medical community that nausea, vomiting, increased urination, increased bowel movement, and altered mental state are common symptoms of diabetic ketoacidosis.

68.     Defendant Knebel knew that Mr. Mackey's symptoms were indicative of diabetic ketoacidosis, based on her medical training and experience, her knowledge of Mr. Mackey's recent steroid treatment, and her knowledge of Mr. Mackey's medical history.

69.     Defendant Knebel's advice to Mr. Mackey to refrain from eating, which *aggravated* Mr. Mackey's condition, was so plainly inappropriate such that the she intentionally, knowingly, and/or recklessly disregarded Mr. Mackey's serious medical needs.

70.     Defendant Knebel's failure to evaluate, access, or monitor Mr. Mackey for diabetic ketoacidosis and instructions to Mr. Mackey to refrain from eating were plainly

10

inappropriate such that the she intentionally, knowingly, and/or recklessly disregarded Mr. Mackey's serious medical needs.

71.    As a result of each Individual Defendant's deliberate indifference to Mr. Mackey's serious medical needs, Mr. Mackey rapidly deteriorated and died from diabetic ketoacidosis with acute esophageal necrosis.

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants Faisal Ahmed, MD, Kimberly Schneider, PA-C, Paul Kelly, RN, Betty Ulmer, RN, and Ashley Knebel, RN, and order Defendants to pay: compensatory damages; punitive damages; pre-judgment interest; attorneys' fees and costs of suit; and, for such other and further relief as this Court deems just.

### COUNT II
### Wrongful Death (Federal Tort Claims Act)
#### (Defendant United States of America)

72.    Each of the foregoing paragraphs is incorporated as if restated fully herein.

73.    At all relevant times, the Individual Defendants, federal government employees, had a duty to possess and exercise a degree of skill, knowledge and care ordinarily used by reasonably careful medical professionals under similar circumstances in treating patients like Mr. Mackey, who were in the custody of the Federal Bureau of Prisons.

74.    The Individual Defendants breached said duty and were professionally negligent in one or more of the following ways, by their:

> a. Failure to properly diagnose the condition of Mr. Mackey;
>
> b. Failure to properly assess, treat and monitor the condition of Mr. Mackey;
>
> c. Failure to properly recognize Mr. Mackey's medical condition;
>
> d. Failure to conduct appropriate and necessary laboratory testing to evaluate and monitor Mr. Mackey, despite the medical history, symptoms and complaints made by Mr. Mackey when he repeatedly

11

presented for medical evaluation and treatment;

e.  Failure to assess, diagnose, treat or monitor Mr. Mackey's hyperglycemia and Diabetes Mellitus Type II;

f.  Failure to administer basic and routine checks and/or laboratory tests to check Mr. Mackey's glucose levels despite the medical history and symptoms with which he presented;

g.  Failure to monitor evaluation potential side effects of administration or oral steroids and steroid injections given to Mr. Mackey;

h.  Failure to assess or evaluate Mr. Mackey's underlying conditions that made him susceptible to Diabetes Mellitus Type II, with increased susceptibility due to oral steroids and steroid injection;

1.  Failure to diagnose or prevent the development of steroid-induced hyperglycemia and/or diabetes mellitus (Type 2) in Mr. Mackey; and

J.  Failure to assess, diagnose or prevent, fatal complications of diabetic ketoacidosis incident to oral steroids and steroid injections administered to Mr. Mackey.

75.    As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by the Individual Defendants, Mr. Mackey rapidly deteriorated and died from diabetic ketoacidosis with acute esophageal necrosis.

76.    The Individual Defendants' acts and omissions were committed within the scope of their employment as federal government employees.

77.    At all relevant times, in the State of Illinois there existed a wrongful death statute, 740 ILCS 180/1 *et seq.*

78.    Mr. Mackey's wrongful death was proximately caused by the willful and wanton conduct of employees of the United States of America in violation of 740 ILCS 180/1 *et seq.*

79.    Mr. Mackey is survived children and other family members.

80.    As a result of Mr. Mackey's wrongful death, his children and family have suffered and will continue to suffer loss of a personal and pecuniary nature including loss of society, affection, companionship, as well as grief, sorrow and mental suffering.

81.    Defendant United States of America is subject to suit for wrongful death caused

by the wrongful acts and omissions of the Individual Defendants pursuant to the FTCA.

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendant United States of America and order Defendant to pay: compensatory damages; attorneys' fees and costs of suit; and, for such other and further relief as this Court deems just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

MARISSLA MACKEY, as Independent Administrator
of the Estate of Tige Cottrell Mackey

By:

*/s/Rebecca Kaiser Fournier*
Counsel for Plaintiff

Date: June 17, 2024

Devlin Joseph Schoop
Rebecca Kaiser Fournier
HENDERSON PARKS, LLC
140 South Dearborn Street Suite 1020
Chicago, IL 60603
312-262-2900
dschoop@henderson-parks.com
rkfournier@henderson-parks.com

13